UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMBERLY ANN NOLLER, MIKE K. NOLLER, and the CLIFFORD C. HYATT AND LOUISE C. HYATT REVOCABLE LIVING TRUST, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES PERRY GRUBBS, SHEARON LOUIS JACKSON, SHIRLEY CATHIE, MICHAEL CURRY, MARY JEAN DANIELS, FREDERICK DAVEY, JOHN DAVIS, DERROL DAWKINS, CAROLYN GALLENDER, HECTOR GONZALES, GREG KENDALL, BRIAN KRUSHEL, ALVIN OLDHAM, CATARINA PEREZ-SCRIVNER, TERRY POL, DOYLE RAHJES, RICHARD SHOCKEY, ISADORE SMALL III, PAUL VAN NORMAN, LINDA WILBRAHAM, KENNETH WILSON, and GAIL ZIMMERMAN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) CASE NO. 1:04-cv-1818-DFH-WTL ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

ENTRY ON MOTIONS TO DISMISS

Plaintiffs, on behalf of a class of persons holding notes issued by the Church Extension of the Church of God ("Church Extension"), are suing defendant directors and officers for damages caused by Church Extension's alleged violations of Indiana Code § 23-2-1-12, which is part of the Indiana Securities Act. The

derivative liability of the defendants for Church Extension's violations is premised on Indiana Code § 23-2-1-19. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Defendants J. Perry Grubbs and S. Louis Jackson (the "officer defendants") and the remaining defendants (the "director defendants") have separately moved to dismiss the complaint for failure to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, the defendants argue that (1) the complaint requires but lacks "specific averments of scienter," (2) the plaintiffs failed to plead that the director defendants had specific knowledge of the facts constituting violations of the Indiana Securities Act, and (3) several claims do not meet the particularity hurdle of Rule 9(b). As discussed below, the plaintiffs have met the heightened pleading requirement of Rule 9(b). The complaint adequately sets forth facts sufficient to infer a reasonable inference of scienter on the part of Church Extension. This is particularly true in light of a jury verdict of federal securities fraud against Grubbs and Jackson regarding these same transactions.[1] Also, Indiana law does not require the plaintiffs to

---

[1]In a civil enforcement action brought by the Securities and Exchange Commission (the "SEC"), the jury found that the SEC proved by a preponderance of the evidence that both Grubbs and Jackson "directly or indirectly caused Church Extension offering circulars to prospective investors to contain false and misleading information," and that they both "acted with fraudulent intent in doing so." *SEC v. Church Extension of the Church of God, Inc.*, Case No. 02-1118, Docket Nos. 371 & 372. Post-verdict motions remain pending, but the trial and verdict show there can be no doubt about the subject of this case. Also, this case cannot be described as the sort of baseless strike suits that have prompted legislative and judicial restrictions on federal securities fraud cases.

plead or prove specific knowledge on the part of the director defendants.  Finally, the complaint adequately sets out the "who, what, when, where, and how" of the claimed misrepresentations.

*The Rule 9(b) Standard*

The Federal Rules of Civil Procedure generally require a plaintiff merely to provide a "short and plain statement" of the facts constituting a claim to meet the "notice pleading" standard of Rule 8.   Rule 9(b), however, heightens this requirement for complaints alleging fraud or mistake.   In those cases, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person," however, "may be averred generally." Rule 9(b) does not require that the plaintiff "go further and allege the facts necessary to show that the alleged fraud was actionable." *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993), citing *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). Rule 9(b) also "does not require that the complaint explain the plaintiff's theory of the case." *Midwest Commerce Banking Co.*, 4 F.3d at 523.  Rather, Rule 9(b) requires a plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992), quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990); *see also Midwest*

-3-

*Commerce Banking Co.,* 4 F.3d at 523 (holding that Rule 9(b) merely requires a complaint to "state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent"). This additional required information is often characterized as "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The Seventh Circuit has explained that Rule 9(b) recognizes that "[a]ccusations of fraud can do serious damage to the goodwill of a business firm or a professional person." The rule discourages people "from tossing such accusations into complaints in order to induce advantageous settlements or for other ulterior purposes." *Old Republic*, 959 F.2d at 682-83. The Seventh Circuit recently reiterated the purpose of Rule 9(b):

> The purpose is to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual. In the typical commercial case there is a substantial interval between the filing of the complaint and the completion of enough pretrial discovery to enable the preparation and disposition of a motion by the defendant for summary judgment. Throughout that period a claim of fraud will stand unrefuted, placing what may be undue pressure on the defendant to settle the case in order to lift the cloud on its reputation. The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless. It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims.

*Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* — F.3d —, —, 2005 WL 1413902, at *2 (7th Cir. June 17, 2005).

Because the defendants have moved to dismiss the complaint, this court must take all facts alleged in the complaint, as well as any reasonable inferences from those facts, in the light most favorable to the plaintiffs. *Uni\*Quality*, 974 F.2d at 920, citing *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir. 1992).

## Background

In the SEC's civil enforcement case under federal law, *Securities and Exchange Commission v. Church Extension of the Church of God, Inc.*, Case No. 02-1118, this court appointed a conservator and receiver for Church Extension and United Management Services, Inc. ("UMS"). Church Extension is a financial arm of the Church of God, headquartered in Anderson, Indiana. UMS is a subsidiary of Church Extension that managed real estate and businesses for Church Extension. In satellite litigation, this court has court dismissed for lack of standing the conservator's attempts to assert claims directly on behalf of note holders, though the conservator has been authorized to pursue claims on behalf of Church Extension and UMS themselves against third parties. See *Marwil v. Grubbs*, 2004 WL 2278751, at *1 n.1 (S.D. Ind. Sept. 30, 2004), citing *Marwil v. Farah*, 2003 WL 23095657, at *1 (S.D. Ind. Dec. 11, 2003).

Accordingly, plaintiff note holders Kimberly Ann Noller, Mike K. Noller, and the Clifford C. Hyatt and Louise C. Hyatt Revocable Living Trust (the "Hyatt

Trust") bring this class action on behalf of themselves and all other holders of outstanding Church Extension notes, alleging violations of the Indiana Securities Act. The Nollers jointly own an outstanding note under which $189,933.34 in principal is past due; the Hyatt Trust owns outstanding notes under which $532,860.02 in principal is past due. Cplt. ¶ 1. Together they are suing defendants James Perry Grubbs and Shearon Louis Jackson, former presidents of Church Extension and UMS respectively, as well as twenty former Church Extension directors.

The complaint alleges that Church Extension, through its investment notes program and the offering circulars that promoted it, violated the Indiana Securities Act by employing a scheme to defraud, engaging in a course of business that operated as a fraud, making untrue statements of material fact, and failing to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading. More specifically, the complaint alleges that Church Extension engaged in fraudulent "bargain-sale" transactions. In a legitimate bargain-sale transaction, a donor may make a gift to a church or other charity by selling a property for less than its fair market value. The donor and recipient then treat the difference between the actual sale price and fair market value as a donation by the donor and as income for the recipient charity. In this case, plaintiffs allege that Church Extension obtained property and then had it appraised at falsely inflated values to increase its reported income and assets, so as to appear solvent when it in fact was not.

A jury found defendants Grubbs and Jackson liable for federal securities fraud for these very transactions.  The complaint also alleges that the offering circulars misrepresented the intended uses of the proceeds of note sales and misrepresented Church Extension's liquid reserves.  The derivative liability of the officers and directors in this case is premised purely on their positions with Church Extension; the complaint does not seek to prove that individual officers or directors sold notes in violation of the Indiana Securities Act.

*Discussion*

I.   *Scienter*

First, the defendants argue that a complaint alleging a violation of the Indiana Securities Act must make specific allegations of fraudulent intent, called scienter, and that this complaint fails to do so.  The complaint alleges that the note holders were harmed because Church Extension violated the Indiana Securities Act when offering and selling investment notes.  Indiana Code § 23-2-1-12 states:

> It is unlawful for any person in connection with the offer, sale or purchase of any security, either directly or indirectly,
>
> > (1) To employ any device, scheme or artifice to defraud, or
> >
> > (2) To make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of circumstances under which are made, not misleading, or

> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Section 1(h) includes corporations within the definition of "persons" for purposes of the Indiana Securities Act.   Section 19(a) imposes civil liability on persons (including corporations) who violate the provisions of the Act:

> A person who offers or sells a security in violation of this chapter, and who does not sustain the burden of proof that the person did not know and in the exercise of reasonable care could not have known of the violation, is liable to any other party to the transaction who did not knowingly participate in the violation or who did not have, at the time of the transaction, knowledge of the violation . . . .

The defendants argue that the Indiana Securities Act requires the complaint to include facts sufficient for this court to infer scienter, that is, either the intent to deceive, manipulate, or defraud; or the reckless disregard for the truth of the material asserted.   See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976) (applying federal securities law); *SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998) (same).   Because Indiana state law provides the rule of decision on plaintiffs' claims in this case, this court's task is to predict how the Indiana Supreme Court would decide the issue if it were presented today.   *Klunk v. Co. of St. Joseph*, 170 F.3d 772, 777 (7th Cir. 1999), citing *McGeshick v. Chouchair*, 72 F.3d 62, 65 (7th Cir. 1995).

The Indiana Court of Appeals has held that § 12(2), which prohibits false statements of fact, does *not* require an intent to defraud, though the court noted in dicta that § 12(1) and § 12(3) (the provisions for a "scheme to defraud" and a "course of business which would operate as a fraud," respectively) expressly require such intent. *Manns v. Skolnik*, 666 N.E.2d 1236, 1248 (Ind. App. 1996).

The Indiana Supreme Court has not decided whether § 12(2) requires pleading and proof of scienter, but it has interpreted the franchise fraud provisions of Indiana Code § 23-2-2.5-27, a statute that has three subsections identical to those in § 12 of the Securities Act. In *Enservco, Inc. v. Indiana Sec. Div.*, 623 N.E.2d 416, 421-22 (Ind. 1993), the Indiana Supreme Court found that only the "scheme to defraud" provision implies a scienter element, and that the provision for "untrue statements" does not. The Indiana Supreme Court distinguished the Indiana statute from SEC Rule 10b-5. The federal statute enabling Rule 10b-5 forbids "any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j, while the Indiana provision contains no language of "manipulation," "deception," or "contrivance." *Enservco*, 623 N.E.2d at 422. The court found the Indiana statute to be more like § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77(q), for which the Supreme Court of the United States found a scienter requirement only in the "scheme to defraud" provision. See *Aaron v. SEC*, 446 U.S. 680, 689-95 (1980). Like § 2.5-27, and unlike the enabling statute of Rule 10b-5, § 12 does not contain any language of "manipulation," "deception," or "contrivance."

*Manns* and *Enservco* provide a solid basis for predicting that the Indiana Supreme Court would treat § 12(2) the same way it treats § 2.5-27(2), and not find scienter to be required for a § 12(2) claim.  Where the Indiana Supreme Court has not directly addressed the issue, decisions of the Indiana Court of Appeals provide a federal court with a "strong indication of how it believes the Supreme Court would decide a similar question, unless there is a persuasive reason to believe otherwise." *Gen. Accident Ins. Co. of Am. v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996); *Klunk*, 170 F.3d at 777; *King v. Damiron Corp.*, 113 F.3d 93, 95 (7th Cir. 1997).  Where the Court of Appeals decision is parallel to the reasoning of the Supreme Court interpreting identical language, it would be difficult to conclude that the Supreme Court would reject that result.

The defendants argue that this court should ignore *Manns* altogether.  They contend that because the text of § 12 is identical to that of SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, the Indiana legislature clearly intended to adopt not only the text of Rule 10b-5, but also all subsequent case law interpreting the rule, and to treat it as a simultaneous interpretation of § 12.  But even where statutory provisions are identical, Indiana state law is not federal law, and interpretations by federal courts of federal provisions (like interpretations by other state courts of their states' similar statutes) are not equivalent to interpretations by Indiana courts of Indiana state statutes.  The Indiana Supreme Court explained in *Enservco*:  "We look to persuasive federal court authority interpreting parallel securities provisions only to the extent we cannot discern the meaning of our

statute from its text and apparent purpose." 623 N.E.2d at 422.  Accordingly, the court finds no persuasive reason to reject the holding of *Manns* that scienter is not a required element of a § 12(2) claim.

Plaintiffs' allegations of fraud on the part of Church Extension itself under § 12(1) and § 12(3) also survive the motion to dismiss.[2]  Rule 9(b) states that "intent" and "state of mind" may be averred generally.[3]  Where allegations of intent or scienter are made "on information and belief," something more is requires, of course, but the plaintiffs in this case have not alleged scienter on information and belief.  Cf. *Old Republic*, 959 F.2d at 684 ("[T]he duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on 'information and belief' unless they were facts inaccessible to the plaintiff, in which event he had to plead the grounds for his suspicions.").  In federal securities fraud cases, the Seventh Circuit has gone a step further and has insisted that the complaint at least "afford a basis for believing that plaintiffs

---

[2]The Indiana Supreme Court's analysis in *Enservco* calls into question the *Manns* dicta that scienter is a required element of a § 12(3) claim.  Nonetheless, that argument has not yet been fully developed by the parties, and it is unnecessary for this court to decide it at this early stage in the litigation.  It is sufficient now to say only that Indiana law may require the plaintiffs to plead an intent to defraud as an element of both the § 12(1) and § 12(3) claims.  The plaintiffs concede this point in their brief.

[3]The federal Private Securities Litigation Reform Act ("PSLRA"), codified at 15 U.S.C. § 78u-4(b), raised the pleading standard even higher for private federal securities fraud cases, requiring a complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  This federal statute does not apply to cases arising under the Indiana Securities Act.

could prove scienter." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996), quoting *DiLeo*, 901 F.2d at 629.  The complaint in this case meets that standard easily.

The complaint alleges that Church Extension engaged in such a scheme by engaging in "bargain-sale transactions," that is, acquisitions of property at less than full value, then using "falsely inflated appraisals . . . in order to increase the amount of non-cash contributions Church Extension recognized as income on its financial statements, thereby generating false paper income and rendering the financial information contained in the Offering Circulars false and misleading." Cpt. ¶ 49-50.  To support allegations of corporate scienter for this scheme, the complaint alleges that in August 2000, six Church Extension officers and executive-level employees resigned in protest of the company's investment practices, providing the directors of Church Extension with an opinion letter from outside counsel as their justification for leaving.  The opinion letter stated that there was evidence of misrepresentations in the May 1, 2000 offering circular, that "it would be difficult for [Church Extension] to justify the continued sale of Notes under the present circumstances," and that according to those resigning, Church Extension had engaged in bargain-sale transactions at year's end to show falsely that assets exceeded liabilities, allowing Church Extension to continue offering and selling notes.  Cpt. ¶ 54.

These allegations more than satisfy the plaintiffs' Rule 9(b) obligation to plead scienter.  The attorney's letter, though it may not prove the underlying misrepresentations, affords a "basis for believing" that the plaintiffs could prove scienter.  See *In re HealthCare Compare*, 75 F.3d at 281.

II.    *Derivative Liability for Directors and Officers*

The defendants also argue that the plaintiffs must plead facts to demonstrate that the defendant directors or officers were directly involved, that is, that they knew of a scheme to defraud, knew of misrepresentations in the offering circulars, or knew of the actions that would operate as a fraud.  This argument is rebutted by Indiana Code § 23-2-1-19(d), as explained by Indiana case law.

The plaintiffs seek relief from the director and officer defendants under § 19(d):

> A person who directly or indirectly controls a person liable under subsection (a) . . . [and] a partner, officer, or director of the person . . . are also liable jointly and severally with and to the same extent as the person, unless the person who is liable sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

The Indiana Supreme Court has held that "this statutory provision imposes absolute liability upon the director of a corporation to purchasers of securities

sold in violation of the Securities Act based on his position as a director unless he proves the statutory defense." *Kirchoff v. Selby*, 703 N.E.2d 644, 651 (Ind. 1998), quoting *Arnold v. Dirrim*, 398 N.E.2d 426, 433-34 (Ind. App. 1979).  Thus, once the plaintiffs adequately plead that Church Extension engaged in any of the acts prohibited by § 23-2-1-12, they need only plead that the defendants were officers or directors of Church Extension during the relevant time period.

The defendants are of course free to invoke the statutory defense that they "did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which" Church Extension would be liable.  See *Arnold*, 398 N.E.2d at 433.  This is an affirmative defense, however.  Rule 9(b) does not require the plaintiffs to anticipate an affirmative defense on which the defendants will bear the burden of proof.  By stating that the named defendants were officers or directors of Church Extension during the relevant time period, the complaint adequately pleads their derivative liability under § 19(d).

III.   *Particularity of Specific Circumstances*

The complaint alleges that Church Extension offered and sold notes through specific published offering circulars in violation of all three provisions of § 23-2-1-12.  Cplt. ¶ 57.  Plaintiffs claim that (1) Church Extension employed a scheme to defraud in violation of § 23-2-1-12(1); (2) the offering circulars, published in the name of Church Extension, contained untrue statements of material fact and

omissions of material fact about the notes themselves, the financial condition of Church Extension and its subsidiaries, the primary use of the proceeds from the sale of notes, and the risks associated with the notes, in violation of § 23-2-1-12 (2); and (3) Church Extension engaged in a course of business that would operate as a fraud or deceit in violation of § 23-2-1-12(3).  *Id.*

The complaint alleges that Church Extension's stated primary business purpose was to fund the construction and renovation of churches affiliated with the Church of God.  Cplt. ¶ 39.  Between August 1997 and April 2002, Church Extension offered and sold investment notes, allegedly to further that purpose. Cplt. ¶ 40.  These sales were initiated by mass mailings of offering circulars dated August 1, 1997; April 30, 1998; April 30, 1999; May 1, 2000; and November 1, 2001.  *Id.*  Church Extension now owes roughly $62 million in principal on the notes, plus interest.  *Id.*

According to the complaint, the offering circulars make material misrepresentations and omissions regarding the notes themselves, the reserve percentage, the primary use of the proceeds from the sale of notes, and the risks associated with the notes.  Though the complaint does not explain every fact necessary to prove the case at trial, it identifies the documents alleged to constitute the misrepresentations, and it sets forth the particular circumstances surrounding those misrepresentations in some detail.

The complaint alleges that the "Offering Circulars represented that the proceeds from the sale of Notes under the Investment Note Program would be used primarily to fund interest-bearing church loans."  Cplt. ¶ 42.  The complaint alleges that in fact, however,

> Church Extension used the majority of the proceeds from the sale of Notes to make interest and principal payments owed to prior investors in the Investment Note Program and to fund speculative real estate transactions structured as bargain sale transactions and designed to inflate artificially recorded assets on Church Extension's books.

*Id.*  The complaint goes on to allege that by 1998, "Church Extension was insolvent and no longer able to pay its obligations to existing note holders without using proceeds from the sale of additional notes."  Cplt. ¶ 43.  Further, it states that in 1998, Church Extension used 35% of new proceeds from the sale of notes to make payments due to prior investors.  In 1999, it used 100% of the proceeds from new notes to pay prior investors and to fund real estate transactions, and in 2000, it used 76% of proceeds to pay prior investors.  Cplt. ¶ 43.  Throughout this time, the offering circulars continued to represent that proceeds from the sale of notes would be used primarily to fund interest-bearing church loans.

The defendants argue that "primarily" is a word open to many meanings, and that the allegations in the complaint do not necessarily contradict the statements in the offering circulars.  In any event, the allegation is stated with enough particularity to put the defendants on notice of the "who, what, when,

where, and how" of the alleged misrepresentation.  The defendants' attempt to parse the meaning of a word in the offering circulars could not justify dismissal under Rule 9(b).  Defendants will have ample opportunity to argue later that the offering circulars were not in fact misleading, but the complaint gives them ample notice of plaintiffs' claims and their factual foundations.

The complaint further alleges that the offering circulars misrepresented Church Extension's alleged policy for retaining a reserve of liquid assets equal to a percentage of its outstanding note obligations.  Cplt. ¶ 44.  Specifically, the complaint claims that in the 1999, 2000, and 2001 offering circulars, the promised reserve percentages were 20%, 8%, and 8%, respectively.  The complaint goes on to allege that the offering circulars "misrepresented that the Liquid Reserve Funds on Church Extension's books met or exceeded the promised percentage."  Cplt. ¶ 45.  Specifically, the complaint states that the offering circulars misrepresented the actual amount of liquid assets by:

> (1) counting as cash or cash equivalents amounts that Church Extension could borrow under a line of credit; (2) counting marketable securities that the Church Extension had pledged as security for a line of credit; (3) including amounts already set aside as reserves to pay annuities on which Church Extension was the obligor; (4) counting municipal bonds under which Church Extension's own subsidiary was the obligor; and (5) improperly counting long-term endowment funds and other reserved assets as liquid reserves.

Cplt. ¶ 46.  The complaint claims that the illiquidity of the liquid reserves was a fact not disclosed to investors, and that the offering circulars misrepresented "that

the reserves were unencumbered." Cplt. ¶ 48.  The complaint goes on to give a specific example of the alleged misrepresentation by describing the May 2000 Offering Circular's representation of the December 1999 liquid reserves, and comparing those representations with the actual amounts.  Cplt. ¶ 47.

The defendants argue that "liquid" is also a word open to many interpretations and that the statements made in the offering circulars were not misrepresentations at the times they were made.  Like the defendants' statements about "primary purpose," however, this is an argument about the facts, not about the particularity of the facts pled in the complaint.  Defendants will have an opportunity to make this argument on the merits.  It does not require or even authorize dismissal under Rule 9(b).

Finally, the defendants argue that the complaint fails to identify who made the alleged misrepresentations.  The officer defendants concede that Church Extension issued the offering circulars referred to in the complaint.  However, they argue, "Church Extension *itself* did not author, draft, edit and revise the offering circulars – *people* did."  Officers' Reply Br. at 1.  Nonetheless, the offering circulars described in the complaint are written communications issued in the name of Church Extension as a company.  Cplt. ¶ 40.  Unlike personal oral communications, which ordinarily must be attributed to a specific individual, communications in the form of the offering circulars issued in the name of the

corporation can indeed be made on behalf of an artificial person, as the complaint alleges.

The plaintiffs' claim under the Indiana Securities Act meets the heightened pleading standard of Rule 9(b).  The complaint states that the misrepresentations are contained in the five offering circulars (the "what"), which were sent to the subsequent note holders through mass mailings (the "where").  These circulars are specifically identified by their dates of publication:  August 1, 1997; April 30, 1998; April 30, 1999; May 1, 2000; and November 1, 2001 (the "when").  Cplt. ¶ 40.  The offering circulars were issued by Church Extension (the "who"), and they allegedly "contained numerous misrepresentations and omitted material facts regarding the Notes, the financial condition of Church Extension and its subsidiaries, the primary use of the proceeds from the sale of Notes, and the risks associated with the Notes" (the "how").  Cplt. ¶ 41.  Furthermore, the complaint describes the specific misrepresentations sufficiently to allow the defendants to answer the complaint.

*Conclusion*

For the foregoing reasons, the motions to dismiss the plaintiffs' complaint are hereby denied.

So ordered.

Date: July 25, 2005

_____

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Mary Terese Doherty
SOMMER BARNARD ATTORNEYS, PC
mdoherty@sommerbarnard.com

Edward Wesley Harris, III
SOMMER BARNARD ATTORNEYS, PC
eharris@sommerbarnard.com

Thomas M. Knepper
KNEPPER & GLADNEY
tk@kg-legal.com

Frederick V. Lochbihler
CHAPMAN & CUTLER
lochbihl@chapman.com